Taylor Preston, Esq.  - Cal. Bar No. 325472
Sophia R. Preston, Esq.  - Cal. Bar No. 321601
PRESTON LAW GROUP, P.C.
4740 Green River Road, Suite 205
Corona, CA 92878
Telephone: (951) 267-2685
Facsimile: (951) 221-6967
spreston@prestonlawgroup.com
tpreston@prestonlawgroup.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA/SOUTHERN DIVISION**

| | |
|---|---|
| JOHN BEMISS,<br>Plaintiff,<br><br>v.<br><br>ANDREW ALCAZAR, as administrator of the Phantom Equity Incentive Plan; RUSSO AND STEELE, L.L.C.; and RUSSO AND STEELE PHANTOM EQUITY INCENTIVE PLAN,<br><br>Defendants. | Case No. 8:22-cv-822<br><br>COMPLAINT (ERISA) |

## INTRODUCTION

1. This case arises out of Defendants' refusal to pay the benefit owed to Plaintiff John Bemiss ("Plaintiff") under the Russo and Steele Phantom Equity Incentive Plan (the "Plan"). The Plan is a "top hat" plan under Employee Retirement Income Security Act of

1974 ("ERISA"). Plaintiff worked with Russo and Steele, L.L.C. ("R&S") from October 15, 2005 to March of 2021. The Plan began in 2012 after Defendant approached Plaintiff and presented him the opportunity to participate in the Plan. The Plan was structured and intended to reward Plaintiff in the form of a commission structure commensurate with the overall growth of R&S each year, as determined by a growth over baseline formula. Plaintiff worked hard to increase the overall growth of R&S each and every year he was with the company. Plaintiff upheld his end of the bargain. By refusing to fully compensate Plaintiff under the Plan terms, Defendants have failed to uphold their end of the bargain. Plaintiff seeks to be made whole, and to be fairly compensated for all of his efforts over the years with R&S.

2. After separating from R&S, Plaintiff demanded payment of his benefit under the Plan and received a determination from the Plan Administrator denying Plaintiff's demand for payment of his benefits. Plaintiff timely appealed the determination, based on an improper interpretation of the terms of the Plan, as well as an incorrect calculation of the value of the benefits owed. The Plan Administrator confirmed their initial determination in response to Plaintiff's appeal by denying Plaintiff's request. The Plan has been improperly managed, funded, and administered by the Plan Administrator. Plaintiff has not received a fair appeal or determination of his benefits owed under the Plan. Plaintiff has fully exhausted his administrative remedies under the Plan.

## JURISDICTION

1. Plaintiff brings this action for equitable, injunctive, and monetary relief pursuant to § ERISA 502; 503; 510, 29 USC §§ 1132; 1133. This court has subject matter jurisdiction

over Plaintiff's claim pursuant to ERISA §§ 502(e)(1), 29 U.S.C. § 1132(e)(1).

## VENUE

2. Venue lies in the Central District of California pursuant to ERISA § 502(e)(2), 29 USC § 1132(e)(2), because this District is where the breach occurred.

## PARTIES

3. At all relevant times, Plaintiff has been a participant as defined by ERISA § 3(7), 29 USC § 1002(7) of the Plan. He is a former employee of Russo and Steele.

4. At all relevant times, Defendant Russo and Steele Phantom Equity Incentive Plan has been an employee benefit plan within the meaning of ERISA §3(2)(A), 29 USC § 1002(2)(A).

5. At all relevant times, Defendant Andrew Alcazar has been the Administrator of the Plan ("Plan Administrator") pursuant to ERISA § 3(16)(A)(i), 29 USC § 1002(16)(A)(i).

6. At all relevant times, Defendant Russo and Steele, L.L.C. has been the employer sponsoring the Russo and Steele Phantom Equity Incentive Plan.

## FACTS

7. Plaintiff was employed at R&S from October 15, 2005 to March 9, 2021, based on R&S's records. Plaintiff's role in the company was to consign vehicles for the auctions held by R&S and to attend and assist with the auctions themselves. R&S is an auction company that holds car auctions in various states, such as Arizona, California, Nevada and Florida. R&S is a small family owned company, owned entirely by Andrew Alcazar and his wife, Josephine Alcazar.

8. R&S typically holds three yearly auctions identified by their location: Scottsdale,

Monterey, and Newport Beach. In 2012, the year that the Plan was created, R&S held only two auctions, Scottsdale and Monterey. From 2013 to 2019 (pre-covid years), R&S held Scottsdale, Monterey yearly. From 2013 - 2018, R&S held an additional auction in Newport Beach. There were Las Vegas auctions held in 2013 and 2014. There was an additional auction held at Amelia Island in 2019, for a total of five (5) different auction locations during Plaintiff's time with R&S. The additional auctions were added to the schedule of R&S as the company continued to grow and expand.

9. The Plan, commonly referred to as a "top-hat" plan, is a Plan under ERISA that is unfunded and is maintained by Defendant primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees. See USC § 1031. A true and correct copy of said Plan is attached as **Exhibit "A"** and incorporated herein by reference.

10. Plaintiff was presented with this plan on July 20, 2012 by Andrew Alcazar and Josephine Alcazar of Russo and Steele, L.L.C. The plan was accompanied by a cover letter, of which a true and correct copy is attached as **Exhibit "B"** to this complaint and incorporated herein by reference. In the cover letter, Defendant states that the purpose of the plan was to tangibly demonstrate how much they valued Plaintiff's commitment and mutual investment. They further state "I trust the investment we have made with various Consultants and Attorneys conveys how strongly we wanted to set up a **legally binding benefit structure** to both avail you the ability **to share in the equity we collectively are building at Russo and Steele**, buy[sic] also to convey the value we believe your hard work and dedication affords our company," [emphasis added].

11. The Plan provides that the Company, defined as Russo and Steele, will make a contribution to the Plan for every year as long as the employee is employed by the Company on the last day of the Plan year. The amount of the contribution is determined as follows:

(a) 6% of the first $250,000 of growth over the Baseline then in effect; or

(b) 8% of the full amount of growth over the Baseline then in effect if growth is greater than $250,000 but does not exceed $500,000; or

(c) 10% of the full amount of growth over the Baseline then in effect if growth exceeds $500,000; **plus**

(d) $10,000 if growth does not exceed $500,000 but net commissions income is $2,500,000.00 or greater for the year.

12. The Plan further provides that the "Baseline then in effect" is determined as the Baseline for the year immediately preceding the Plan Year for which the contribution is made. The Baseline for 2011 was defined as $3,300,000.00. The baseline for 2012 was defined as $3,399,000, and the Baseline for 2013 was $3,500,970.00.

13. The Plan provides that a Participant will be 100% vested in his account upon the earliest of the following:

(a) The date of the Participant's death if the Participant is still employed by the Company on that date;

(b) The date the Participant incurs a Disability if the Participant is still employed by the Company on that date;

(c) The date a Change in Control occurs if the Participant is still employed by

        the Company on the business day immediately preceding the date the Change in Control occurs; or

    (d) On December 31, 2021 if the Participant is still employed by the Company on that date.

14. The Plan provides a vesting schedule prior to the occurrence of the 100% vesting events described above. It applies separately to each contribution. It is as follows:

    (a) One-third vested on the last day of the first Plan Year immediately following the Plan Year for which the contribution was made;

    (b) Two-third vested on the last day of the second Plan Year immediately following the Plan Year for which the contribution was made;

    (c) Three-thirds [fully] vested on the last day of the third Plan Year immediately following the Plan Year for which the contribution was made.

15. Plaintiff separated from Russo and Steele on March 20, 2021, according to company records.

16. Plaintiff received a letter dated April 8, 2021 from Defendant R&S regarding issues relating to his separation from R&S. A true and correct copy of said letter is attached as **Exhibit "C"** and incorporated herein by reference. In said letter, Defendant states that it is their understanding that Plaintiff has received any final compensation owed for his services and that no further compensation or commissions are owed.

17. On May 5, 2021, Plaintiff sent a Demand for a Claim for Benefits to Russo and Steele demanding his benefits under the Plan in the amount of $215,009 plus any interest accrued to date, provided in annual equal payments over (5) years of $43,000. A true and

correct copy of said letter is attached as **Exhibit "D"** and incorporated herein by reference. This value was based on a preliminary estimate of his benefits determined from Plaintiff's informal record keeping. The actual amount owed to Plaintiff is believed to be far greater than the above stated value of $215,009 based on more recent calculations.

18. Defendant, through counsel, emailed a response to Plaintiff on May 12, 2021, asserting that the Baseline thresholds outlined in Article 2 of the Plan were never met or exceeded. It was also asserted that Plaintiff's failure to demand payment in past years was evidence of the failure to meet the Plan threshold requirements. A true and correct copy of said email is attached as **Exhibit "E"** and incorporated herein by reference.

19. Plaintiff responded via letter on June 8, 2021, providing his calculation for compensation and refuted the misrepresentations in Defendant's prior email dated May 12, 2021. A true and correct copy of said letter is attached as **Exhibit "F"** and incorporated herein by reference.

20. On June 25, 2021, sixteen (16) days after Plaintiff's communication regarding his benefit owed under the Plan, Defendant R&S filed a civil action against Plaintiff in the Superior Court of Arizona, County of Maricopa related to his employment with R&S (Case No. CV2021-010159). Notably, Defendant plead that the monetary relief in said case could exceed $300,000, similar to the amount Plaintiff was claiming under the Plan. A true and correct copy of the filed complaint is attached as **Exhibit "G"** and incorporated herein by reference.

21. Further, the Arizona Complaint was filed while the determination of benefits owed under the Plan was still pending with the Plan Administrator. R&S, by and through

Andrew Alcazar, an owner of R&S <u>and the Plan Administrator</u>, filed the Complaint prior to providing a response to Plaintiff's demand for benefits under the Plan, likely in retaliation for demanding his benefits owed under the Plan. Plaintiff has had to expend considerable funds, effort, and time defending against the retaliatory suit.

22. Plaintiff is under information and belief that Defendant filed the Arizona civil action in an attempt to harass and intimidate Plaintiff from further pursuing his benefits owed under the Plan, or to attempt to offset any benefits owed under the Plan to Plaintiff.

23. Plaintiff received a letter dated September 14, 2021 from Defendant confirming Plaintiff's June 8, 2021 letter as a claim for benefits under the Plan pursuant to Section 7.04. A true and correct copy of said letter is attached as **Exhibit "H"** and incorporated herein by reference. The Plan Administrator advised that the terms "growth" and "net commission income" are not defined in the Plan. The Plan Administrator determined those terms to mean "commission revenue of the Employer derived from those annual Auctions that the Employer conducted at the time of the inception of the Plan for which a plan participant works during the Plan Year." Based on that definition, the Plan Administrator determined that Plaintiff was entitled to $134,980.65 in benefits, paid in annual payments of $20,996.13.

24. Plaintiff filed an official appeal of determination of Benefits under the Plan in a letter dated October 27, 2021. A true and correct copy of said letter is attached as **Exhibit "I"** and incorporated herein by reference. Specifically, Plaintiff appealed the determination of the meaning of "growth" and "commission income" (hereinafter "the disputed terms"), the exclusion of the annual Newport Beach Auction, the Las Vegas

Auction, Amelia Island Auction, and the ultimate value of the benefits owed to Plaintiff. Plaintiff included a discussion of the relevant legal authority and a full analysis of the appropriate meaning of the disputed terms. Plaintiff also requested (1) financial statements supporting the calculation of commission for each auction at all times relevant since the inception date of the Plan; and (2) financial statements supporting the calculation of net revenue from each auction at all times relevant since the inception date of the plan.

25. On March 3, 2022 Plaintiff received a determination to his appeal from the Plan Administrator. A true and correct copy of said letter is attached as **Exhibit "J"** and incorporated herein by reference. In this letter, the Administrator reaffirmed his decision as stated in the September 14, 2021 letter and provided several summary statements of spreadsheets reflecting profit and losses from the Scottsdale and Monterey Auctions. Notably, post-sale commissions were not included in these calculations, nor were several other auctions held by R&S during Plaintiff's time with the company that Plaintiff was actively involved in.

## CAUSES OF ACTION:

### FIRST CLAIM FOR RELIEF

**[Claim for Denial of Benefits Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) against Defendant Russo and Steele Phantom Equity Incentive Plan]**

26. Plaintiff incorporates Paragraphs 1 through 24 as though fully set forth herein.

27. ERISA § 502(a)(1)(B), 29 USC § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to him under the terms of a plan, to enforce his rights

under the terms of a plan, and/or to clarify his rights to future benefits under the terms of a plan.

28. The Plan terms provide for a benefit to Plaintiff at the occurrence of one of the vesting events named in Paragraph 13 above. This vesting event occurred on March 9, 2021 the date that Plaintiff separated from R&S, per R&S's determination.

29. Plaintiff properly made a claim for benefits on May 5, 2021.

30. Defendant received a determination to his claim which he timely appealed.

31. Plaintiff has exhausted the Plan's administrative appeals process.

32. The Plan Administrator outright denied any benefits to Plaintiff in writing on May 12, 2021. The Plan Administrator later informed Plaintiff he was only entitled to $134,980.65 in benefits. Based on Plaintiff's calculations, he is actually entitled to $495,148 in benefits.

33. Defendant's denial of Plaintiff's claim and appeal is arbitrary and capricious. Defendant interpreted the Plan terms to exclude any growth of the company outside of two arbitrarily designated auctions, in contradiction with the stated intent and purpose of the Plan.

34. Defendant failed to fully and fairly review Plaintiff's claim and appeal to his claim for benefits owed under the Plan. Defendant summarily dismissed Plaintiff's appeal of the Plan Administrator's interpretation of the Plan language and the amount of benefits owed. Defendant did not respond substantially to Plaintiff's appeal and nor did he provide adequate records as requested. The Plan Administrator failed to provide specific reasons for denials, and maintains an interpretation of the disputed terms that is entirely

unreasonable.

35. The written denial provided by the Plan Administrator is unclear or otherwise deficient in that it fails to address many of the critical legal arguments presented by Plaintiff. A full and complete response was never provided to Plaintiff.

36. The Plan Administrator failed to fully and fairly review Plaintiff's claim for benefits under the Plan. Plaintiff maintains that the Plan Administrator failed to act in good faith in coming to a determination of Plaintiff's appeal.

## SECOND CLAIM FOR RELIEF

**[Claim for Denial of Benefits Pursuant to ERISA § 503, 29 U.S.C. § 1133 against Defendant Russo and Steele, L.L.C.; and Defendant Andrew Alcazar as Plan Administrator]**

37. Plaintiff incorporates Paragraphs 1 through 35 as though fully set forth herein.

38. ERISA § 503, 29 USC § 1133(1) provides that every employee benefit plan shall provide adequate notice in writing to any participant whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant.

39. ERISA § 503, 29 USC § 1133(2) provides that every employee benefit plan shall afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

40. Defendant, the Plan Administrator, failed to give a full and fair review by failing to provide specific reasons for their denial of Plaintiff's appeal to his claim for benefits owed

under the Plan. The denial was conclusory, dismissive, and did not address Plaintiff's main legal arguments. Further, the Plan Administrator failed to provide adequate records as requested in Plaintiff's appeal in order to determine the proper amount of benefits owed under the Plan.

41. Defendant Andrew Alcazar as Plan Administrator provided a deficient and unclear written denial of Plaintiff's appeal, dismissively referring to the prior determination of benefits without further explanation. Plaintiff was denied a good faith review of his appeal.

### THIRD CLAIM FOR RELIEF

**[Claim for Injunction and Specific Performance Pursuant to ERISA § 502(a)(3), 29 USC § 1132(a)(3) against Defendants Russo and Steele, L.L.C. and Andrew Alcazar, as Administrator of the Phantom Equity Incentive Plan for Failure to Administer Plan in Accordance with written terms and Applicable Law]**

42. Plaintiff incorporates Paragraphs 1 through 40 as though fully set forth herein.

43. ERISA § 502(a)(3), 29 USC § 1132(a)(3) authorizes a beneficiary of a plan to file suit to "enjoin any act or practice" that violates Title 1 or ERISA or the terms of the plan and/or to obtain "other appropriate relief" to redress such violations.

44. Article 4.02 titled Participant's Account provides that the Administrator will maintain or cause to be maintained by journal entry, a book reserve account for the Participant for the purpose of accounting for Participant's Plan Benefit.

45. The Plan Administrator wholly failed to maintain or cause to be maintained a journal entry or book reserve account for Plaintiff's Plan Benefit. The first denial of

benefits via email dated May 12, 2021 demonstrates that the Plan administrator either (1) had no book reserve account maintained or (2) outright misrepresented to Plaintiff that he had earned no Plan benefits. Clearly the Defendant had failed to maintain a book entry account, otherwise the value of Plaintiff's Plan Benefit would have been readily available.

46. Article 4.03 titled Adjustment of Account; Account Balance of the Plan provides that the Participant's Account will be adjusted annually (or at such other more frequent times as may be determined by the Administrator) to reflect contributions credited to the Account, Plan benefit payments charged to the account, and earning credited to the Account since the immediately preceding adjustment dates.

47. The Plan Administrator wholly failed to adjust Plaintiff's account annually. The first denial of benefits via email dated May 12, 2021 demonstrates that the Plan administrator either (1) had no account balance available because it was not maintained or (2) outright misrepresented to Plaintiff that he had earned no Plan benefits. This is further evidenced by the determination of a *different* value provided by the Administrator in a letter dated September 14, 2021 in which the Administrator determined that Plaintiff was entitled to $134,980.65 in benefits under the Plan. Clearly the Defendant had failed to adjust Plaintiff's account annually, otherwise the value of Plaintiff's Plan Benefit would have been readily available.

48. Article 4.05 titled Account Statements of the Plan provides that the Administrator will provide the Participant with a statement of the value of his Account at least annually (and at such other times as the Administrator may determine).

49. Plaintiff has never received a statement of the value of his Account from the Plan

Administrator. The Plan Administrator wholly neglected his duty to provide Plaintiff with a statement of the value of his Account annually, resulting in a dispute of the appropriate benefits owed to Plaintiff currently.

## FOURTH CLAIM FOR RELIEF

**[Claim for Statutory Penalties Pursuant to ERISA § 502(c)(1), 29 USC § 1132(c)(1) against Defendant Andrew Alcazar as Plan Administrator]**

50. Plaintiff incorporates Paragraphs 1 through 49 as though fully set forth herein.

51. ERISA § 502(c)(1), 29 USC § 1132(c)(1) provides that an administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant by mailing the material requested to the last known address of the Participants within 30 days after such request may in the court's discretion be personally liable to such Participant in the amount of up to $100 a day from the date of such failure or refusal (unless such failure or refusal results from matters reasonably beyond the control of the administrator).

52. Plaintiff requested (1) Financial statements supporting the calculation of commission for each auction at all times relevant since the inception date of the Plan; and (2) Financial statements supporting the calculation of net revenue from each auction at all times by letter on October 27, 2021. Plaintiff requested this information to help him determine the appropriate Plan benefit.

53. Plaintiff received a letter on December 21, 2021 from the Plan Administrator's counsel who informed Plaintiff that the Plan administration needs additional time to gather the information requested and to consider his appeal. No further reasons were

provided by the Plan Administrator as to why he failed to provide the requested information that should have been readily available, as the records were required to be maintained and adjusted annually pursuant to Articles 4.02 and 4.03 of the plan.

54. Defendant purportedly provided the requested information on April 31, 2022, however, the financial information provided consisted of three spreadsheets (which consisted of twenty-four (24) total lines of information) which was grossly conclusory and woefully inadequate. Plaintiff was not provided the financial information or documentation that was considered or relied upon in the course of making the benefit determination.

## FIFTH CLAIM FOR RELIEF

**[Claim for Interference & Retaliation Pursuant to ERISA § 510, 29 U.S.C. § 1140 against Defendant Defendant Russo & Steele, L.L.C.]**

55. Plaintiff incorporates Paragraphs 1 through 56 as though fully set forth herein.

56. ERISA § 510 provides participants and beneficiaries a right to sue any person that acts adversely to an employee for improper ERISA related reasons.

57. Defendant R&S filed a civil action believed to be retaliatory against Plaintiff for demanding his duly owed benefits under the Plan.

58. Defendant's filing of the suit was done primarily to intimidate and harass Plaintiff in retaliation and in an attempt to dissuade Plaintiff from pursuing his benefit under the Plan, and to attempt to offset any benefits owed to Plaintiff under the Plan.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief:

**As to the First Claim for Relief:**

1. Order Defendants to pay $495,148 owed under the Plan to Plaintiff with prejudgment interest at the rate of 10% per annum;

2. Award Plaintiff reasonable attorneys' fees and costs of suit.

3. Any such further relief as the Court deems equitable and just.

**As to the Second Claim for Relief:**

1. Order Defendant Andrew Alcazar as Plan administrator to make a proper review of the Plaintiff's appeal;

2. Order Defendant Andrew Alcazar as Plan Administrator to award Plaintiff his benefits owed under the plan of $495,148;

3. Any such further relief that the Court deems equitable and just.

**As to the Third Claim for Relief:**

1. Order that Defendant Russo and Steele, L.L.C. hold the sum of $495,148 in a constructive trust for the benefit of Plaintiff;

2. Enjoin Defendant Russo and Steele, L.L.C. and Defendant Andrew Alcazar as Plan administrator from interpreting the Plan to exclude growth and commission income earned from any auctions other than Scottsdale and Monterey and post-sale commission income;

3. Any such further relief that the Court deems equitable and just.

**As to the Fourth Claim for Relief:**

1. Order Defendant Andrew Alcazar as Plan Administrator to pay all civil penalties applicable;

2. Order that Defendant Russo and Steele, L.L.C. hold the sum of $495,148 in a constructive trust for the benefit of Plaintiff;

3. Any such further relief that the Court deems equitable and just.

**As to the Fifth Claim for Relief:**

1. Order Defendant Russo and Steele, L.L.C. to pay Plaintiff his benefit of $495,148 owed under the Plan;

2. Order that Defendant Russo and Steele, L.L.C. hold the sum of $495,148 in a constructive trust for the benefit of Plaintiff;

3. Any such further relief that the Court deems equitable and just.

Dated: April 15, 2022                               Respectfully submitted,

By:       /s/ *Sophia r. Preston*
Sophia R. Preston (Cal. Bar No. 321601)
PRESTON LAW GROUP, P.C.
4740 Green River Rd., Suite 205
Corona, CA 92878
Telephone: (951) 267-2685
Facsimile: (951) 221-6967
spreston@prestonlawgroup.com

*Attorneys for Plaintiff*